ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| ORIENTAL BANK<br><br>Apelados<br><br>v.<br><br>DENISSE BONILLA SÁNCHEZ<br><br>Apelante | KLAN202400371 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil Núm.: SJ2021CV02497<br><br>Sobre: Cobro de Dinero, Ejecución de Hipoteca |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Juez Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de julio de 2024.

Comparece ante nos la señora Denisse Bonilla Sánchez mediante el presente recurso de *Apelación* y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 7 de febrero de 2024. En aludido dictamen, el TPI declaró **Ha Lugar** la *Solicitud de Sentencia Sumaria* presentada por Oriental Bank ordenando así el pago íntegro de la deuda hipotecaria y en su negativa, la venta de la propiedad hipotecada mediante pública subasta.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* recurrida.

**I.**

El 26 de abril de 2021, Oriental Bank presentó ante el TPI una *Demanda* en ejecución de hipoteca y cobro de dinero contra la señora Bonilla Sánchez.[1] En síntesis, Oriental Bank alegó que la señora Bonilla Sánchez otorgó un Pagaré Hipotecario por la suma de $95,250.00 a la orden de RG Premier Bank of Puerto Rico con

---

[1] Apéndice de la parte apelante, 1 en las págs. 1-47.

Número Identificador

SEN2024 _____

un interés anual de 7% y que consta en la escritura #296 sobre la propiedad:

> ---"URBANA: Solar número Treinta y Siete (37) del plano de inscripción para la Urbanización Buen Consejo, radicado en el Barrio Bonacillos de la Mun[i]cipalidad de San Juan, Puerto Rico, con un de diez metros con veinte metros de fondo con un área total de doscie[nt]os metros cuadrados. En lindes por el NORTE, su frente con la Calle Colón; por el SUR, con el Solar número cuarenta y dos (42), propiedad de Aniceto Iglesia; por el ESTE, con el Solar número treinta y ocho (38) propiedad de Ramón Reverón; y por el OESTE, con el solar número treinta y seis (36) p[ro]piedad de Félix Guzmán.------------------------------
> ---Enclava una residencia de dos pisos de concreto reforzado.------------------------------------------------
> ---Inscrita al folio ciento cinco (105) del tomo mil quinientos cuatro (1,504) de Río Piedras Norte, finca número tres mil ciento dieciocho (3,118) inscripción tercera, Registro de la Propiedad de San Juan, Sección Segunda.[2]-----------------------------------------------------

Expresó, además, que para el momento de la presentación de la demanda era el tenedor del aludido pagaré y la deuda que consta plasmada en el mismo se encontraba vencida, líquida y exigible por lo que le solicitaba a la señora Bonilla Sánchez el pago de:

> $74,492.60 de principal al 9 de abril de 2021, $2,172.70 en intereses al 7.000% desde el 1ro. de diciembre de 2020 hasta el 1 de mayo de 2021, acumulándose a razón de $14.2861 diarios a partir de dicha fecha, $1,109.15 por cargos por demora computados hasta el 9 de abril de 2021 y los que se venzan desde esa fecha en adelante, $451.25 por Sobregiro en Cuenta de Reserva hasta el 9 de abril de 2021, $227.00 por InspFee Asse, $1,399.28 por FeeAssmt, $1,330.82 por PrinForb COV, $3,105.08 por INT Forb COV y tres cantidades equivalentes a $9,525.00 pactadas para el pago de costas, gastos y honorarios de abogado, en cantidad pactada por intereses vencidos acumulados, y en cantidad asegurada por adelantos.[3]

Oriental Bank solicitó, además, en su escrito que de no ser posible el pago de la totalidad de la deuda, se ordenara al Alguacil del Tribunal vender la propiedad en pública subasta.[4]

---

[2] *Íd.*
[3] *Íd.*
[4] *Íd.*

Por su lado, el 21 de julio de 2021, la señora Bonilla Sánchez presentó su *Contestación a demanda y reconvención.*[5] En resumen, la señora Bonilla Sánchez negó los hechos expuestos por Oriental Bank y alegó que se le había aprobado una moratoria de tres meses durante la pandemia la cual se extendió hasta agosto 2020 quedando pendiente la reanudación de los pagos de la hipoteca en septiembre 2020.[6] De igual forma, manifestó que realizó los pagos de la hipoteca correspondientes a los meses de octubre, noviembre y diciembre de 2020 y los correspondientes a los meses de febrero, abril y mayo del 2021, pero cuando se disponía a realizar el pago del mes de junio fue informada que no podía realizarlo porque la cantidad no correspondía a la cantidad adeudada y su caso se encontraba en la división legal.[7] Por último, alegó que no fue emplazada por Oriental Bank, pero se sometió voluntariamente a la jurisdicción del tribunal.[8]

El 16 de agosto de 2021 Oriental Bank presentó su *Contestación a la reconvención.*[9] Comenzó alegando que el préstamo hipotecario de la señora Bonilla Sánchez no era uno garantizado por Fannie Mae/Freddie Mac como expuso esta.[10] Alegó, además, que la señora Bonilla Sánchez se atrasó en los pagos noviembre a diciembre de 2020 y para abril de 2021 no había pagado cuatro meses por lo que se devolvió en el mes de junio las cantidades de $1,448.00 y $1,896.00 por no cubrir la totalidad de lo debido.[11]

Luego de varios trámites procesales, el 15 de agosto de 2023 Oriental Bank presentó una *Solicitud de sentencia sumaria.*[12] En síntesis, Oriental Bank expuso veintiocho determinaciones de

---

[5] Apéndice de la parte apelante, 2 en las págs. 48-54.
[6] *Íd.*
[7] *Íd.*
[8] *Íd.*
[9] Apéndice de la parte apelante, 3 en las págs. 55-57.
[10] *Íd.*
[11] *Íd.*
[12] Apéndice de la parte apelante, 7 en las págs. 64-186.

hechos que consideraba no estaban en controversia.[13] Alegó que la señora Bonilla Sánchez le adeudaba la siguiente cantidad:

Principal **$ 74,492.60**
Intereses hasta el 1ro de diciembre de 2020 acumulándose a razón de $14.2861 -33 periodos ($434.5400)- a partir de dicha fecha hasta el 1 de septiembre de 2023 **$ 14,339.82**
Honorarios y gastos **$ 21,001.70**
Incluye Gastos y Honorarios (Legal fees) hasta el 10% de principal Cargos adicionales **$ 46.00**
Reserva Plica (Escrow) **$2,326.70**
Total: **$ 112,206.82.**[14]

Al no haberse pagado el préstamo en su totalidad al primero de abril, Oriental Bank solicitó se declarara Ha Lugar su solicitud y permitiera la ejecución de la hipoteca inscrita.[15]

Así las cosas, el 21 de septiembre de 2023 la señora Bonilla Sánchez presentó su *Moción en oposición a sentencia sumaria y en solicitud de sentencia sumaria.*[16] En síntesis, la señora Bonilla Sánchez arguyó que no procedía la solicitud de Oriental Bank pues entendía que se encontraban los siguientes asuntos en controversia:

> a. Se encuentra en controversia si al momento de la radicación de la Demanda la demandada se encontraba en suficiente atraso (120 días) como para que procediera la acción de ejecución de la hipoteca.
>
> b. Se encuentra en controversia si el Banco cumplió con la cláusula 22 de la Escritura de hipoteca y si se considera que hizo las gestiones razonables de notificar a la Demandada de la intención de presentar demanda por aceleración de la deuda por incumplimiento con los pagos del préstamo hipotecario.
>
> c. Se encuentra en controversia si la Demandada puso su préstamo hipotecario al día el 1 de junio de 2021 al haber hecho pagos que fueron aceptados y cobrados por el Banco según le fuera solicitado a la demandada de $1,448.00 el 20 de mayo de 2021 y de $1,896.53 el 1 de junio de 2021.
>
> d. Si obró de mala fe el Banco al momento en que intentó devolver los pagos realizados por la

---

[13] *Íd.*
[14] *Íd.*
[15] *Íd.*
[16] Apéndice de la parte apelante, 8 en las págs. 187-313.

demandada una vez los había cobrado e hizo cheques por las cantidades de dichos pagos que no fueron aceptados por la demandada.

e. Se encuentra en controversia si el Banco actuó de mala fe toda al no reconocer pagos en cheques que cobró y a pesar de no haberse cobrado los cheques devueltos, continúan sin reconocer pagos hechos mediante cheques que fueron aceptados y procesados de la demandada.

f. Se encuentra en controversia el periodo de duración de moratoria que debió ser de 6 meses de acuerdo con las solicitudes aprobadas, según surge de las propias cartas del Banco y cuándo debió entenderse que procedía el reinicio de los pagos de la demandada, en lugar de cinco meses según surge de las propias cartas del banco. También existe controversia sobre si actuó de mala fe el Banco cuando mediante la moratoria permitida por ley federal, la demandada podía solicitar extensiones adicionales de hasta 180 días más, sin recibir respuesta del banco ante su segunda solicitud de extensión.

g. Se encuentra en controversia si el banco de manera unilateral aumentó la cuantía del pago de las mensualidades del préstamo hipotecario en medio de la moratoria contrario a los acuerdos alcanzados en la misma, alterando ilegalmente las condiciones del préstamo hipotecario.

h. Se encuentra en controversia la validez del emplazamiento que no fue diligenciado a la parte demandada personalmente y fue sometido bajo perju[ri]o al tribunal cuando surge de evidencia de cámaras de seguridad que el emplazador dejó el emplazamiento en una residencia que no era la que se encontraba la demandada al momento del alegado diligenciamiento mediante entrega personal.[17]

El 7 de febrero de 2024 el TPI emitió una Sentencia declarando **Ha Lugar** la *Solicitud de sentencia sumaria* presentada por Oriental Bank.[18] El foro primario esbozó las siguientes determinaciones de hechos:

1. La parte demandada, Denisse Bonilla Sánchez, consta como dueña en pleno dominio de la propiedad que se describe a continuación:
---URBANA: solar número treinta y siete (37) del plano de inscripción para la urbanización

---

[17] *Íd.*
[18] Apéndice de la parte apelante, 9 en las págs. 314-326.

Buen Consejo radicado en el Barrio Monacillos de la municipalidad de San Juan, Puerto Rico, con un frente de diez (10) metros con veinte (20) metros de fondo con un área total de doscientos metros cuadrados. En lindes por el NORTE, su frente, con la calle Colon; por el SUR con el solar número cuarenta y dos (42), propiedad de Aniceto Iglesias, por el ESTE, con el solar número treinta y ocho (38) propiedad de Ramon Reverón; y, por el OESTE, con el solar número treinta y seis (36) propiedad de Félix Guzmán. Enclava una residencia de dos pisos de concreto reforzado. Inscrita al folio ciento cinco (105) del tomo mil quinientos cuatro (1504) de Rio Piedras Norte, finca tres mil quinientos dieciocho (3,518); inscripción tercera.

2. Como se ha indicado, la propiedad aparece inscrita a favor de Denisse Bonilla Sánchez, propietaria y vecina de Guaynabo, quien adquirió por compraventa, mediante escritura 578, el 1 de junio de 2006, ante la notaria Georgette M. Rodríguez Figueroa, inscripción 31.

3. Como carga y gravamen surge la hipoteca objeto de este proceso legal, a favor de RG Premier Bank, o a su orden, por la suma principal de $95,250.00 a razón del 7% anual, testimonio 27,045, con vencimiento al 1 de abril de 2037, con tres créditos garantizados del 10% cada uno para cubrir costas, gastos y honorarios, El tipo mínimo en caso de ejecución, por la escritura 296, otorgada en San Juan, el 28 de marzo de 2007, ante Armando Martínez Vilella, se una cantidad equivalente al principal original del pagaré garantizado con dicha hipoteca, según surge de la inscripción 33. Se aneja copia de la escritura de constitución de hipoteca.

4. La señora Denisse Bonilla Sánchez es la titular registral de la propiedad objeto de ejecución y la que suscribió el gravamen hipotecario de dicha propiedad.

5. La parte demandada se obligó a pagar la suma principal señalada en el pagaré, sus intereses al tipo convenido y según más adelante se específica.

6. Según el pay off letter al 31 de agosto de 2023 las cantidades adeudadas por la demandada son las siguientes:

| | |
|---|---|
| Principal | $74,492.60 |
| Intereses hasta el 1ro de diciembre de 2020 acumulándose a razón de $14.2861 -33 periodos ($434.5400)- a partir de dicha fecha hasta el 1 de septiembre de 2023 | $14,339.82 |
| Honorarios y gastos | $21,001.70 |
| Incluye Gastos y Honorarios hasta el 10% de principal | |
| Cargos adicionales | $46.00 |
| Reserva Plica (Escrow) | $2,326.70 |
| Total: | $112,206.82 |

7. El pagaré hipotecario garantizado con hipoteca constituida sobre la propiedad descrita en el inciso #1, mediante la Escritura #296 y ante el Notario Armando Martinez Vilella.

8. La hipoteca a la cual se hace referencia está inscrita en el Registro de la Propiedad de Río Piedras Norte, y la misma no ha sido cancelada, ni en todo, ni en parte, ni está pendiente de cancelación.

9. Las cantidades de dinero que se especifican están vencidas, son líquidas y exigibles, y la parte demandante ha reclamado el pago de estas en su totalidad, más las cantidades que se acumulen a partir de esta fecha.

10. Para los casos en los que la parte demandada incumpliera con sus obligaciones, las partes acordaron garantizar el pago total y completo de la deuda que evidencia el pagaré anteriormente referido y todas y cada una de las condiciones que el mismo contiene, así como las demás condiciones, términos y estipulaciones contenidas en esta escritura, y para garantizar además tres sumas adicionales para las costas, gastos y honorarios de abogado que la se obliga a satisfacer en caso de reclamación judicial o ejecución.

11. La demandada reconoce sus iniciales y firma en el documento contractual.

12. La propiedad ha estado vacante o alquilada, pues la remodeló y reparó para propósitos de inversión.

13. La demandada posee otras tres propiedades las cuales alquila, en San Juan y Guaynabo. Una en la urbanización Apolo de Guaynabo, dos en la urbanización Las Cumbres, y la de Buen Consejo.

14. Del historial de pagos surge que posterior al 1 de septiembre de 2020, fecha en que reanudaban los pagos mensuales, la demandada los siguientes pagos; el 10 de octubre de 2020, 16 y 31 de diciembre de 2020 y el 26 de febrero de 2021, todos por la cantidad de $724.00, y fueron aplicados al préstamo hipotecario.

15. El 25 de febrero de 2021 el banco envió al correo postal de la demandada la notificación de aceleración de la deuda. El banco recibió devuelta la carta con un sello del correo postal del 5 de mayo de 2021 con la notificación de unclaimed.

16. La demandada reconoce que hay una cantidad adeudada pero el banco no acepta esa suma.

17. La demandada, no su representante legal, fue quien redactó la reconvención.

18. El 1ro de mayo de 2020, la demandante notificó a la demandada que le fue aprobado la moratoria en el

pago del préstamo hasta junio 2020 y debía reanudar los pagos mensuales el 1ro de julio del 2020.

19. El 20 de agosto de 2020 la parte demandante le notificó a la demandada que le fue aprobada la moratoria por un término de tres meses, que se cumplían al 31 de agosto del 2020 y que debería comenzar a realizar los pagos a partir del 1 de septiembre de 2020.

20. Al 1 de marzo de 2021 la demandada adeudaba $3,973.46 con la advertencia de si pagaba posterior al 16 de marzo del 2021 se le iba a cobrar un recargo por mora de $31.69.

21. Al 1 de abril de 2021 la demandada adeudaba $4,005.15 con la advertencia de si pagaba posterior al 16 de abril del 2021 se le iba a cobrar un recargo por mora de $31.69.

22. Al 1 de mayo de 2021 la demandada adeudaba $4,760.84 con la advertencia de si pagaba posterior al 16 de mayo del 2021 se le iba a cobrar un recargo por mora de $31.69.

23. El 20 de mayo de 2021 la demandada hizo un pago de $1,448.00, que le fue devuelto por el banco por no cubrir la totalidad de lo adeudado.

24. El 1 de junio de 2021 la demandada hizo un pago de $1,896.53 que el banco le devolvió el pago por no cubrir la totalidad de lo adeudado.

25. Al 1 de junio de 2021 la demandada adeudaba $4,068.53 con la advertencia de si pagaba posterior al 16 de junio del 2021 se le iba a cobrar un recargo por mora de $31.69.

26. La demandada hizo un pago de $1,896.53 que no fue aceptado por el banco y por tanto no le fue aplicado. Este pago no ponía la cuenta al día.

27. El 23 de octubre de 2020 se le informa la demandada que la diferencia del pago mensual que incrementó de $701 a $724 se debió a la deficiencia creada por la moratoria, ya que ella tenía que cubrir el escrow de los meses de marzo a agosto de 2020.[19]

A la luz de la prueba presentada en los escritos, el TPI razonó que procedía dictar sentencia sumariamente pues la señora Bonilla Sánchez incumplió con su obligación contractual de pagar las mensualidades de la hipoteca.[20] De igual forma, concluyó que desde el 1 de septiembre de 2020 la cuenta de la señora Bonilla

---

[19] Apéndice de la parte apelante, 9 en las págs. 314-326.
[20] *Íd.*

Sánchez se encontraba en atrasos, realizando pagos parciales.[21] A tales efectos realizó el siguiente dictamen:

-Se ordena a la demandada pagar a la demandante las siguientes partidas: de $74,492.60 de principal, más $14,339.82 en intereses a razón de 7.000% contados a partir del 1 de diciembre de 2020 hasta el 1 de septiembre de 2023, acumulándose a razón de $14.2861 diarios hasta el saldo total, $1,964.78 por cargos por demora computados hasta el 1 de septiembre de 2023, $2,326.70 por Sobregiro en Cuenta de Reserva hasta el 1 de septiembre de 2023, $251.00 por InspFee Asse, $1,399.28 por Int Forb Mar, $1,330.82 por PrinForb COV, $3,105.08 por INT Forb COV, $4,956.62 por LgFeeAssm, 7,962.40 por foreclosure expenses, más $9,525.00 de costas, gastos y honorarios de abogado.

- Se ordena la desestimación de la reconvención;

- Se ordena al Alguacil de este Tribunal, que de no satisfacerse la deuda antes de que esta sentencia advenga firme, que proceda a vender la propiedad mueble sujeta al gravamen mobiliario;

- Se ordena al Alguacil del Tribunal, que de no satisfacerse la deuda antes de que esta sentencia advenga firme, que proceda a vender las propiedades inmuebles antes descritas en pública subasta, al mejor postor, libre de cargas y gravámenes posteriores a las hipotecas ejecutadas y una vez vendidas ponga al comprador en posesión material de las mismas dentro de los próximos veinte (20) días contados desde el momento de celebrarse la venta. Servirá como tipo mínimo para la primera subasta la cantidad que surge de las correspondientes escrituras en las cuales se constituyeron las garantías hipotecarias;

- Se ordena que luego del pago de las costas, gastos y honorarios de abogados en que se incurra como consecuencia de este pleito, que del producto de la venta se proceda a pagar a la parte demandada hasta el monto total de su reclamación, según decretado por esta sentencia y que, si quedare algún remanente, el mismo sea depositado en la Secretaría de este Tribunal para ser entregado a la parte demandada mediante disposición posterior;
- Se ordena y decreta, además, la venta y ejecución de cualesquiera otros bienes de la parte demandada hasta dejar pagada cualquier deficiencia o parte insoluta de la sentencia aquí solicitada, que no sea cubierta con el producto de la venta y ejecución de los inmuebles;

- Una vez celebrada la subasta y vendidos los inmuebles hipotecados, se expedirá Mandamiento por el Secretario de este Tribunal, dirigido al Registrador de la Propiedad, para que se cancelen en los libros a

---

[21] *Íd.*

su cargo los gravámenes posteriores al aquí ejecutado, si alguno[.][22]

Inconforme con aludido dictamen, la señora Bonilla Sánchez presentó su *Moción en reconsideración y determinaciones de hechos adicionales*.[23] En resumen, la parte demandada arguyó que erró el foro primario al declarar con lugar la *Solicitud de sentencia sumaria* pues quedaron algunas controversias sin resolver.[24] En su alternativa, la señora Bonilla Sánchez solicitó que se hicieran exposiciones más definidas sobre los siguientes asuntos:

> 1) la deuda de la Demandada al momento de la radicación de la Demanda; 2) el desglose de la misma en cuanto a los meses de retra[s]o y cuanto correspondía a penalidades; 3) cuando se dio por comenzado el proceso de notificación de aceleración de la deuda y cuantos meses de retra[s]o había en la fecha de dicha notificación; 4) si a la fecha de notificación de Aceleración de la deuda, el Banco podía realizar dicha aceleración conforme las normas federales y 5) desde que fecha se hizo la deuda una líquida vencida y exigible.[25]

Por su parte, Oriental Bank presentó su *Solicitud de confirmación de sentencia y oposición reconsideración* en la cual se opusieron a la moción presentada por la señora Bonilla Sánchez.[26] Así las cosas, el 13 de marzo de 2024 el TPI emitió una Resolución declarando **No ha lugar** la *Moción en reconsideración y determinaciones de hechos adicionales* presentada por la señora Bonilla Sánchez.[27]

Inconforme, acude ante nos la señora Bonilla Sánchez mediante el presente recurso de *Apelación* y nos plantea la comisión de los siguientes errores:

> **Primer Error:**
> Erró el honorable Tribunal de Primera Instancia al no dar por admitidos los hechos propuestos por la parte apelante en su oposición y solicitud de sentencia sumaria, presentados conforme requiere la Regla 36.3 (B) y sin oposición por la parte demandante y

---

[22] *Íd.*
[23] Apéndice de la parte apelante, 10 en las págs. 327-338.
[24] *Íd.*
[25] *Íd.*
[26] Apéndice de la parte apelante, 12 en las págs. 340-361.
[27] Apéndice de la parte apelante, 13 en las págs. 362.

reconvenida conforme requiere la Regla 36.3 (C) y la Regla 36.3 (D) y a su vez controvertir en la sentencia los hechos que no fueron controvertidos por el demandante.

### Segundo Error:
Erró el honorable Tribunal de Primera Instancia mediando abuso de discreción en sus determinaciones de hechos en que sin oposición de la demandante controvirtió hechos con argumentación que no fue hecha por el banco en los hechos 17 al 27 de la sentencia.

### Tercer Error:
Erró el honorable Tribunal de Primera Instancia al de[c]larar ha lugar la sentencia sumaria del banco sin que en su moción ni en la demanda contase con ni una sola declaración jurada y sostener sus alegaciones sobre documentos que no respaldan lo a[s]everado, son incorrectamente citados y hasta que contradicen las alegaciones incluidas en su sentencia sumaria.

### Cuarto Error:
Erró el honorable Tribunal de Primera Instancia al no resolver las controversias planteadas en torno al tiempo de duración de la moratoria concebida a la apelante habiendo reconocido que la extensión de la moratoria era de 3 meses a partir del 1 de julio de 2020 pero a su vez indicando que el vencimiento de la misma fue el 30 de agosto de 2020, obrando el banco de esta manera en contra de sus propios actos.

### Quinto Error:
Erró el honorable Tribunal de Primera Instancia al reconocer que la demandante realizó pagos el 10 de octubre de 2020; 16 y 31 de diciembre de 2020; pero acepta que se haya iniciado el proceso de ejecución con menos de dos meses de atrasos al 1 de febrero de 2021.

### Sexto Error:
Erró el honorable Tribunal de Primera Instancia al reconocer que la demandante realizó pagos [...] el 10 de octubre de 2020; 16 y 31 de diciembre de 2020 y el 26 de febrero de 2021, que fueron aplicados al préstamo pero a su vez indica que a la fecha de la radicación de la demanda había un incumplimiento suficiente como para poder iniciar la demanda de ejecución si que el banco acredita[s]e h[a][b]er cumplido antes con las cláusulas 15, 19 y 22 [d]el contrato de hipoteca.

### Séptimo Error:
Erró el honorable Tribunal al no evaluar ni resolver las alegaciones de incumpliendo contractual de parte del banco, al unilateralmente aumentar el pago mensual del préstamo sin cumplir con la cláusula 15 del préstamo hipotecario.

***Octavo Error:***
Erró el honorable Tribunal de Primera Instancia al reconocer los pagos realizados por la demandada al banco el 20 de mayo de 2021 por $1,448.00 y el 1 de junio de 2021 por $1, 896.[53]que fueron aceptados, y corroborados por el banco, poniendo la deuda al corriente, mientras que acepta que el banco intentó devolver estos pagos en contra de sus propios actos.

***Noveno Error:***
Erró el honorable Tribunal de Primera Instancia al desestimar de plano la reconvención donde, entre otras cosas se alegó los actos de mala fe del demandante sin discusión y sin que se haya rebatido con la prueba estas alegaciones.

El 22 de abril de 2024 Oriental Bank presentó su *Alegato en oposición al recurso.* Contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

***La Sentencia Sumaria***

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R.36, gobierna el mecanismo de la sentencia dictada sumariamente. Esta herramienta procesal sirve al propósito de aligerar la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. Véase, *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot,* 203 DPR 687, 699 (2021). En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra,* pág. 110. Por ello, "[l]a controversia debe ser de una calidad suficiente como

para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

La Regla 36.2 del mismo ordenamiento procesal, establece que la parte contra la cual se haya formulado una reclamación podrá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". 32 LPRA Ap. V, R. 36.2. Por su lado, conforme la Regla 36.3 de Procedimiento Civil, *supra*, en su contestación, la parte promovida "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede". 32 LPRA Ap. V, R. 36.3 (c). Asimismo, la Regla 36.3 de Procedimiento Civil, *supra*, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. 32 LPRA Ap. V, R. 36.3; Véase, *Pérez Vargas v. Office Depot, supra*, pág. 698. Por consiguiente, el incumplimiento del promovente de estas formalidades acarrea que el tribunal no esté obligado a considerar su pedimento. *Meléndez González et al. v. M. Cuebas, supra*, pág. 111. En caso de que el promovido sea quien incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho". *Id.*

En cuanto a la revisión de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que

se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. Esto es, no estamos compelidos a adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.*

Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el foro impugnado

aplicó correctamente el derecho a los hechos incontrovertidos. *Id.,* pág. 119.

Al dictar una sentencia sumaria, este tribunal deberá realizar un análisis dual que consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo, supra,* pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede. *Id.,* págs. 333-334.

### *Hipoteca y su Ejecución*

La Hipoteca es un derecho real, de naturaleza accesoria e indivisible, que para su existencia debe constar en escritura pública e inscrita en el Registro de la Propiedad. *Dist. Unidos Gas v. Sucn. Declet Jiménez,* 196 DPR 96, 110-111 (2016) citando a *Westernbank v. Registradora,* 174 DPR 779, 784 (2008). La misma "...garantiza una obligación pecuniaria y recae directamente sobre bienes inmuebles, ajenos y enajenables, que permanecen en la posesión del propietario o titular". *Íd.* Para que una hipoteca se constituya nuestro ordenamiento jurídico establece que depende de la existencia de algunos requisitos esenciales, estos son:

> (1) que se establezca para asegurar el cumplimiento de una obligación principal; (2) que la cosa hipotecada pertenezca en propiedad a la persona que la hipoteca, y (3) que las personas que constituyan la hipoteca

tengan libre disposición de sus bienes o, en caso de no tenerla, se hallen legalmente autorizados al efecto.[28]

Cuando la deuda hipotecaria no ha sido satisfecha, nuestro ordenamiento jurídico le brinda al acreedor hipotecario diferentes maneras de hacer valer su crédito y poder ejecutar su garantía, entre ellas esta el procedimiento de ejecución de hipoteca por la vía ordinaria. *Atancia Corp. v. J.M. Saldaña, Inc.,* 133 DPR 284, 292 (1993). En este procedimiento el acreedor hipotecario, por tratarse de un procedimiento de naturaleza mixta: personal y real, puede optar por obtener "…la satisfacción de la sentencia que sea dictada en reconocimiento de su crédito mediante requerimiento personal al deudor o mediante la ejecución de la garantía hipotecaria". *First Fed. Savs. v. Nazario et als.*, 138 DPR 872, 880 (1995) citando a *P.R. Prod. Credit Assoc. v. Registrador*, 123 DPR 231 (1989) y *C.R.U.V. v. Torres Pérez*, 111 DPR 698, 699 (1981).

### *Cobro de Dinero*

Cuando se realiza una acción de cobro de dinero nuestro ordenamiento jurídico requiere que el acreedor establezca que la deuda que se pretende recolectar es una líquida, exigible y se encuentra vencida. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001) citando a *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 900 (1993). Se entiende que una deuda es "líquida" cuando la cantidad de dinero que se exige es de carácter cierto y determinado. *Ramos y otros v. Colón y otros*, supra citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168; *Freeman v. Tribunal Superior*, 92 D.P.R. 1, 25 (1965). Mientras que "exigible" se refiere a que la obligación que se encuentra en controversia "puede demandarse en su cumplimiento". *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

---

[28] *Dist. Unidos Gas v. Sucn. Declet Jiménez*, 196 DPR 96, 110-111 (2016).

**III.**

Examinada *de novo* la *Solicitud de Sentencia Sumaria* y la *Moción en oposición a sentencia sumaria y en solicitud de sentencia sumaria*, acogemos las determinaciones de hechos no controvertidos realizadas por el TPI, por entender que estas se sostienen en la prueba presentada por las partes en sus escritos. A base de estas determinaciones, concluimos que, tal y como resolvió el TPI, procedía el pago íntegro de la deuda hipotecaria por parte de la señora Bonilla Sánchez y en su defecto, la venta de la propiedad hipotecada mediante pública subasta.

En primer lugar, la parte apelante nos señala que erró el foro primario al no dar por admitidos los hechos propuestos por la parte apelante en su oposición y solicitud de sentencia sumaria, sin oposición por la parte apelada conforme requiere la Regla 36.3 (C) y la Regla 36.3 (D) y a su vez controvertir en la sentencia los hechos que no fueron controvertidos por el demandante. No le asiste razón, veamos.

La Regla 36.3 (C) de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V., R.36. 3 (C), establece que la parte contra quien se presente una sentencia sumaria viene obligada a contestar las alegaciones presentadas de forma detallada y específica y de no hacerlo se dictará sentencia en su contra **si procede**. Por otro lado, la Regla 36.3 en su inciso (D) de Procedimiento Civil de Puerto Rico, supra, establece que toda relación de hechos expuesta en la solicitud de sentencia sumaria o incluso en su contestación **podrá considerarse admitida** si se indican los párrafos o las páginas de las declaraciones juradas o de otra prueba admisible en evidencia donde se fundamenta, a menos que se encuentre controvertida.

En el caso ante nuestra consideración la parte apelante nos plantea que erró el foro primario al no declarar ha lugar las treinta y seis (36) determinaciones de hechos que ésta consideraba no

estaban en controversia, pues la parte apelada no se opuso a ellos. Luego de revisar la *Moción en oposición a sentencia sumaria y en solicitud de sentencia sumaria* y la prueba presentada concluimos que no le asiste razón a la parte apelante en su planteamiento, pues entendemos que son hechos que **no** quedaron sustentados con la prueba presentada.[29] De igual forma, deseamos recalcar que nueve (9) de las treinta y seis (36) determinaciones de hechos que la parte apelante consideraba no estaban en controversia son similares a las determinaciones de hechos realizadas por el foro primario en su *Sentencia* y confirmados ante este Tribunal en la revisión *de novo*.[30]

En segundo lugar, la parte apelante nos apuntala que erró el foro primario al abusar de su discreción en sus determinaciones de hechos, en que, sin oposición de la parte apelada, la parte apelante controvirtió hechos con argumentación que no fue hecha por el banco en los hechos diecisiete (17) al veintisiete (27) de la sentencia. No le asiste razón a la parte apelante en este señalamiento de error, pues luego de revisar las determinaciones de hechos diecisiete (17) al veintisiete (27) de la *Sentencia* y la prueba que la respalda concluimos que son hechos que quedaron incontrovertidos.[31]

Por otro lado, la parte apelante nos señala que erró el TPI al declarar ha lugar la sentencia sumaria del banco sin que en su solicitud ni en la demanda contase ni una sola declaración jurada y al sostener sus alegaciones sobre documentos que no respaldan lo aseverado, son incorrectamente citados y la parte apelante entiende que contradicen las alegaciones incluidas en su solicitud. No le asiste razón, veamos.

---

[29] Véase Apéndice de la parte apelante, 7 en las págs. 64-186; Apéndice de la parte apelante, 8 en las págs. 187-313.
[30] Véase Apéndice de la parte apelante, 8 en las págs. 208-214; Apéndice de la parte apelante, 9 en las págs. 326-320.
[31] Véase Apéndice de la parte apelante, 9 en las págs. 316-320 respaldándose en las págs. 206, 278, 243, 293,294, 297, 290, 283, 290, 283 y 174.

La Regla 36.1 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V., R.36. 1, establece que la parte promovente de una moción solicitando se dicte sentencia de manera sumaria deberá estar fundada en declaraciones juradas "...**o en aquella evidencia** [admisible] **que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes**...".

En el caso de marras, la parte apelada presentó conjunto a su *Solicitud de Sentencia Sumaria*: una certificación registral, pagaré hipotecario, certificación de balance de la deuda, la escritura de la hipoteca, la carta de aceleración (matasellada), extractos de la deposición llevada acabo a la parte apelante, una certificación de balance de la deuda, historial de pagos y el historial de la cuenta de la parte apelante.[32] Conforme a lo que establece la Regla 36.1 de Procedimiento Civil de Puerto Rico, supra, **toda la evidencia presentada por la parte apelada era prueba admisible** por lo que no le asiste razón a la parte apelante en su planteamiento de error. De igual forma, surge de la *Sentencia* emitida por el TPI que las determinaciones de hechos estaban fundamentadas en prueba presentada por la parte apelada como por la prueba presentada por la parte apelante, por lo que reafirmamos nuestra posición en que no le asiste razón a la parte apelante en su planteamiento de error.[33]

Como cuarto señalamiento de error, la parte apelante nos señala que erró el foro primario al no resolver las controversias planteadas en torno al tiempo de duración de la moratoria concebida a la apelante habiendo reconocido que la extensión de la moratoria era de tres meses a partir del 1 de julio de 2020 pero a su vez indicando que el vencimiento de la misma fue el 30 de

---

[32] Véase Apéndice de la parte apelante, 7 en las págs. 64-186.
[33] Véase Apéndice de la parte apelante, 8 en las págs. 208-214.

agosto de 2020, actuando contra sus propios actos. No nos convence la teoría de la parte apelante.

Si bien es cierto que la parte apelada el 20 de agosto de 2020 cursó una carta a la parte apelante sobre la concesión de una extensión de la moratoria hasta agosto 2020, el planteamiento de que la parte apelada actuó en contra de sus propias acciones al establecer que era por tres meses no nos convence.[34] Debemos recordar que, entre las partes, existe un contrato de préstamo avalado con hipoteca, cuyas cláusulas constan claras.[35] Además, surge del legajo judicial, de la evidencia presentada por ambas partes, reiterado incumplimiento con la deuda hipotecaria quedando esta **líquida, vencida y exigible** por ende no vemos razón de adentrarnos a utilizar la doctrina de equidad.[36]

En quinto lugar, la parte apelante nos señala que erró el foro primario al reconocer que la demandante realizó pagos el 10 de octubre de 2020; 16 y 31 de diciembre de 2020; pero acepta que se haya iniciado el proceso de ejecución con menos de dos meses de atrasos al 1 de febrero de 2021. No le asiste razón, pues surge del historial de pagos que la parte apelante **estuvo en atrasos desde el mes de septiembre de 2020**.[37]

Por otro lado, la parte apelante nos señala que erró el TPI al reconocer que esta realizó pagos el 10 de octubre de 2020; 16 y 31 de diciembre de 2020 y el 26 de febrero de 2021, que fueron aplicados al préstamo, pero reconoce que a la fecha de la radicación de la demanda había un incumplimiento suficiente como para poder iniciar la demanda de ejecución sin que se acreditase que el banco cumplió antes con las cláusulas 15, 19 y 22 del contrato de hipoteca. No le asiste razón, veamos.

---

[34] Véase Apéndice de la parte apelante, 8 en la pág. 243.
[35] Véase Apéndice de la parte apelante, 1 en las págs. 4-46.
[36] Véase Apéndice de la parte apelante, 7 en las págs. 166-167.
[37] *Íd.*

Haciendo referencia a lo anteriormente discutido en el quinto señalamiento de error, surge del historial de pago que la parte apelante estuvo en atrasos en el pago de la hipoteca desde el mes de septiembre de 2020.[38] Surge, además que desde diciembre de 2020 la parte apelada ha intentado en múltiples ocasiones contactar a la parte apelante para orientarle sobre los pagos de la hipoteca, alternativas de pago, "*Loss Mitigation*", entre otras alternativas sin respuesta de la parte apelante.[39] Que incluso el 25 de febrero de 2021 fue enviada la carta de aceleración de la deuda.[40] **A la luz del incumplimiento en los pagos de hipoteca por parte de la parte apelante, la parte apelada logró mostrar** en su *Solicitud de Sentencia Sumaria* **que la deuda se encontraba líquida, vencida y exigible razón por lo cual procedía dictar sentencia a su favor**, por lo que no le asiste razón a la parte apelante en su señalamiento de error.[41]

En séptimo lugar, la parte apelante nos apuntala que erró el TPI al no evaluar ni resolver las alegaciones de incumpliendo contractual de la parte apelada, al unilateralmente aumentar el pago mensual del préstamo sin cumplir con la cláusula 15 del préstamo hipotecario. No le asiste razón, pues surge del historial de la cuenta que **el 23 de octubre de 2020 se le orientó a la parte apelante que la razón del aumento en el pago de hipoteca fue por la diferencia creada por la moratoria**.[42] Por lo que debía cubrir el "*escrow*" de los meses en que estuvo en moratoria, es decir, marzo 2020 hasta agosto 2020.[43]

La parte apelante también alega que erró el foro primario pues reconoció los pagos realizados por ésta a la parte apelada el

---

[38] *Íd.*

[39] Véase Apéndice de la parte apelante, 7 en las págs. 170-174.

[40] Véase Apéndice de la parte apelante, 7 en las págs. 125-134.

[41] Véase Apéndice de la parte apelante, 9 en las págs. 314-326; *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001) citando a *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 900 (1993).

[42] Véase Apéndice de la parte apelante, 7 en la pág. 174.

[43] *Íd.*

20 de mayo de 2021 por $1,448.00 y el 1 de junio de 2021 por $1,896.53 que fueron aceptados, y corroborados por la parte apelada, poniendo la deuda al corriente, mientras que acepta que la parte apelada intentó devolver estos pagos en contra de sus propios actos. No le asiste razón, pues surge del estado de cuenta del mes de junio que la parte apelante **adeudaba un total de $4,068.53** y los pagos realizados de $1,448.00 y $1,896.53 **no ponían la cuenta al día por lo que fueron devueltos a la parte apelante**.[44]

Finalmente, la parte apelante nos señala que erró el foro primario al desestimar de plano la reconvención donde alegó los actos de mala fe de la parte apelada sin discusión y sin que se haya rebatido con la prueba estas alegaciones. No le asiste razón, pues luego de examinar el expediente judicial, incluyendo la *Solicitud de Sentencia Sumaria* y la *Moción en oposición a sentencia sumaria y en solicitud de sentencia sumaria* y la prueba presentada en ambas llegamos a la misma conclusión que el foro primario; las alegaciones contenidas en la *Contestació*n *a demanda y reconvención* son improcedentes.[45]

IV.

Por los fundamentos que anteceden, confirmamos la *Sentencia* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[44] Véase Apéndice de la parte apelante, 8 en la pág. 290.
[45] Véase Apéndice de la parte apelante, 2 en las págs. 48-54; Apéndice de la parte apelante, 7 en las págs. 64-186; Apéndice de la parte apelante, 8 en las págs. 187-313.